# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**TITUS HENDERSON,**

    Plaintiff,

    v.                                                        Case No. 19-CV-749

**JIM SCHWOCHERT,** *et al.***,**

    Defendants.

## SCREENING ORDER

Plaintiff Titus Henderson, an inmate confined at the Green Bay Correctional Institution, filed a *pro se* complaint under 42 U.S.C. § 1983 alleging that the defendants violated his civil rights. This order resolves Henderson's motion for leave to proceed without prepaying the filing fee and his motion to waive the initial partial filing fee and screens his complaint.

The court has jurisdiction to resolve Henderson's motion to proceed without prepaying the filing fee and to screen the complaint in light of Henderson's consent to the full jurisdiction of a magistrate judge and the Wisconsin Department of Justice's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between the Wisconsin Department of Justice and this court.

1. **Motion for Leave to Proceed without Prepaying the Filing Fee**

The Prison Litigation Reform Act (PLRA) applies to this case because Henderson was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On July 9, 2019, the court ordered Henderson to pay an initial partial filing fee of $0.22. (ECF No. 8.) On August 2, 2019, Henderson moved to waive that fee. (ECF No. 9.) Henderson asserts that he is not allowed to use a legal loan to pay his filing fees, and therefore "no funds exist to pay" the $0.22 initial partial filing fee. (*Id.*)

This court has the authority to waive a plaintiff's initial partial filing fee under 28 U.S.C. § 1915(b)(4) if he lacks both the "assets" and the "means" to pay it. The Seventh Circuit has explained that "[i]t is not enough that the prisoner lack assets on the date he files." *Newlin v. Helman*, 123 F.3d 429, 435 (7th Cir. 1997), *overruled in part on other grounds by Walker v. O'Brien*, 216 F.3d 626, 628–29 (7th Cir. 2000), *and Lee v. Clinton*, 209 F.3d 1025, 1027 (7th Cir. 2000). If that were the case, prisoners could easily avoid paying the initial partial filing fee by spending what is in his trust account before filing his lawsuit. Therefore, a prisoner's "means" is construed broadly. A prisoner may lack "assets" but still have "means" to pay the fee.

2

According to his trust account statement, Henderson received small deposits to his account in January and February 2019. But all of those deposits were immediately withdrawn to pay filing fees in thirteen other federal lawsuits and one state lawsuit brought by Henderson. From March 2019 through June 2019, shortly before he filed his trust account statement, Henderson was apparently in disciplinary segregation and received no deposits. His ending balance was zero.

Given that Henderson has neither the assets nor the means to pay the initial partial filing fee, the court will not require him to pay one. The court will therefore grant Henderson's motion to waive the initial partial filing fee and his motion for leave to proceed without prepaying the filing fee. He must pay the remainder of the filing fee over time in the manner explained at the end of this order.

**2. Screening the Complaint**

*2.1 Federal Screening Standard*

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing

*Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes *pro se* complaints liberally and it holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

*2.2 Henderson's Allegations*

Henderson lists as defendants Wisconsin Department of Corrections ("WDOC") Division of Adult Institutions Administrator Jim Schwochert, WDOC Secretary Cathy Jess, and former WDOC Secretary Edward Wall.

He also lists Wisconsin Secure Program Facility ("WSPF") Warden Gary Boughton and WSPF employees Tim Haines, Lieutenant Tom, Lieutenant Brudos, David Gardner, Lebeus Brown, Thomas Brown, Sergeant Godfrey, Correctional Officer Nelson, Sergeant Hennerman, and Lieutenant Hanfield.

Henderson sues the defendants in their individual and official capacities. (ECF No. 1 at 2.) He asserts claims under 42 U.S.C. §§ 1981 and 1983. (*Id.*)

Henderson alleges that on January 24, 2013, defendants Hennerman, T. Brown, and Nelson referred to Henderson using racial epithets and threatened to assault him as they were taking him to the law library. (ECF No. 1 at 3.) Hennerman allegedly asked defendant Godfrey to "show me how to kill this n[*****] and get away with it." (*Id.*) Godfrey instructed Hennerman and T. Brown to kick Henderson's outside leg "to make it look like a clean self-defense kill." (*Id.*) Later, when Hennerman, Nelson, and T. Brown took Henderson from the law library to his cell, Hennerman kicked Henderson's leg, causing Henderson to lean to the side in an attempt to stop the attack. (*Id.*) The three defendants yelled "racist comments" at Henderson as they continued to attack him. (*Id.* at 4.) Godfrey allegedly came running up to join the assault, laughing, and asked, "You kill that n[*****]?" (*Id.*) Henderson alleges that Haines, L. Brown, and Gardner encouraged the attack and abuse on Henderson. (*Id.* at 6.)

After the attack, defendants L. Brown, Gardner, and Brudos left Henderson naked in a cold, feces-smeared cell, with open vents and without clothes or bedding. (ECF No. 1 at 4.) Henderson alleges that "months later," Dr. Cox (not a defendant)

5

denied him medical care. (*Id.*) T. Brown, L. Brown, and Hennerman wrote a false disciplinary report against Henderson for injuring another officer during the attack. (*Id.*) Defendants Tom and Haines then imposed 360 days of solitary confinement on Henderson, which extended his mandatory release date, without providing a hearing. (*Id.*) Henderson alleges that defendants Wall and Haines "visited" Henderson's cell, and Wall sent e-mails "to address [the] physical torture/abuse of WSPF inmates in Solitary Conf." (*Id.* at 5.) Yet Henderson remained in the cell without adequate clothes, bedding, or food. (*Id.*)

Henderson separately asserts that defendants Wall and Jess created DOC policy 373.09 allowing juveniles to defend themselves against attacks by guards but did not create a complementary policy allowing adults to defend themselves. (ECF No. 1 at 5.) Henderson asserts that this is age discrimination and that Jess has "established a 'State Created Danger' in violation of Wis. Stat. § 939.43–.49." (*Id.*)[1] Henderson asserts that Schwochert and Jess intentionally created DOC policy 373.09 to prevent Henderson from using self-defense and to punish him for attempting to do so during the attack. (*Id.* at 6.) He says Schwochert and Jess have intentionally refused to provide a complementary policy that would protect black inmates. (*Id.*)

Henderson also alleges that from March 1, 2008, through January 1, 2014, defendants Brown[2] and Gardner assisted T. Brown and Hennerman in writing false

---

[1] Henderson also asserts that "Raemisch" is liable for creating the "state created danger" but does not list anyone with that name as a defendant in this case.

[2] The Court assumes this reference is about defendant L. Brown.

conduct reports against Henderson. (ECF No. 1 at 6.) Henderson allegedly filed numerous grievances and "special placement needs form" to Haines and Boughton about his treatment by T. Brown. (*Id.*) Henderson does not say whether he received any response to his grievances or requests.

Henderson seeks a declaratory judgment, an injunction, and monetary damages. (ECF No. 1 at 8–9.)

*2.3 Analysis*

    2.3.1   Claims Under 42 U.S.C. § 1981

Although Henderson ostensibly brings claims under 42 U.S.C. § 1981, he does not assert any valid claims under that statute. Under § 1981:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). The statute thus "prohibits racial discrimination in the making and enforcement of private contracts." *Runyon v. McCrary*, 427 U.S. 160, 168 (1976). In this case, there is no allegation that the defendants interfered with Henderson's right to make or enforce a contract on account of his race. Therefore, the complaint fails to state a claim under § 1981.

    2.3.2   Official Capacity Claims

Henderson sues only WDOC employees. The claims against these defendants in their official capacities are construed as claims against the WDOC, the agency for

7

which they work. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). These claims against the WDOC are "no different from a suit against the State itself" and are, therefore, construed as claims against the State of Wisconsin. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Graham*, 473 U.S. at 165–66; *Monell*, 436 U.S. at 690 n.55). But a state is not a "person" subject to suit under § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will*, 491 U.S. at 71. Henderson, therefore, cannot recover money damages against any defendant in his or her official capacity.

The Supreme Court has clarified, however, that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71 n.10 (quoting *Graham*, 473 U.S. at 167 n. 14, and *Ex Parte Young*, 209 U.S. 123, 159–60 (1908)). To proceed with his official-capacity claims for injunctive relief, Henderson must allege that the State of Wisconsin was responsible for the violation of his constitutional rights because of a practiced custom or policy. *Monell*, 436 U.S. at 691.

Henderson seeks to sue current WDOC Secretary Jess and former WDOC Secretary Wall in their official capacities. Because a suit against an official in his or her official capacity is, in effect, a suit against the official's office, *Will*, 491 U.S. at

8

71, these claims are duplicitous. Henderson's official-capacity claim against the WDOC Secretary is directed at only Jess, the current WDOC Secretary.

Henderson seeks to challenge the creation and implementation of DOC 373.09 without a complementary policy allowing adults to use self-defense during assaults by prison guards. He insists that Schwochert, Jess, and other prison officials created DOC 373.09 to discriminate against him, as an adult inmate, and prevent adult inmates from defending themselves against attacks in prison. He seeks a judgment declaring that Schwochert and Jess's actions in enforcing only the juvenile statute violates his rights and an injunction ordering Schwochert and Jess to apply the statute to all adult inmates. Because this claim seeks prospective relief, the court will permit Henderson to proceed against Schwochert and Jess in their official capacities. *See Deida v. City of Milwaukee*, 192 F. Supp. 2d 899, 917 (E.D. Wis. 2002) (quoting *Papasan v. Allain*, 478 U.S. 265 (1986), and *Green v. Mansour*, 474 U.S. 64, 68 (1985)).

Henderson also seeks an injunction ordering an offsite medical exam to determine the extent of his injuries from the attack. But Henderson does not allege that there is a practiced custom or policy tying the State of Wisconsin to his assault by the hands of the prison officers. He may not sue Jess in her official capacity for this injunctive relief.

Henderson also seeks a judgment against Godfrey, T. Brown, Nelson, and Hennerman declaring that their use of racial comments during the alleged attack constituted a hate crime. But Henderson does not allege that these defendants attacked him pursuant to a State custom or policy. Moreover, the relief he seeks

9

would be retroactive in nature, and Henderson does not allege that these defendants are committing ongoing violations of his rights. As such, this relief does not fall into the exception of *Ex Parte Young*, and Henderson is barred from seeking it in this action. *See Deida*, 192 F. Supp. 2d at 913 (citing *Green*, 474 U.S. at 68). He, therefore, does not state a claim again Godfrey, T. Brown, Nelson, Hennerman, or any other WSPF defendant in his or her official capacity.

### 2.3.3 Individual Capacity Claims

Many of Henderson's allegations are stated against one or two defendants with an " et al." following those defendants' names. Referring to a group of defendants in that collective fashion, however, is not sufficient to state a claim against every defendant. A plaintiff instead "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *e.g. Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) ("Given the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed.").

Henderson's allegations that Hennerman, T. Brown, Nelson, and Godfrey assaulted him amount to a claim of excessive force. The Eighth Amendment protects a convicted inmate from cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). "[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment."

*Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Establishing an Eighth Amendment claim of excessive force requires a showing that (1) "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation," and (2) "'the officials act[ed] with a sufficiently culpable state of mind.'" *Hudson*, 503 U.S. at 8 (quoting *Wilson*, 501 U.S. at 298, 303). The "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 6 (citing *Whitley*, 475 U.S. at 320-21).

Henderson sufficiently alleges a claim of excessive force against Hennerman, T. Brown, Nelson, and Godfrey, who he says attacked him without provocation when they were escorting him to his cell. He also alleges that he heard them discussing how to make the attack look like they were acting in self-defense and referring to Henderson using racist language. The court will allow these Eighth Amendment claims to proceed.

To the extent Henderson seeks to hold Haines, L. Brown, and Gardner responsible as supervisors of the guards who attacked him, he fails to allege facts establishing a link between the attack and the supervisors' awareness of it. Under § 1983, a government official "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676. The official may be liable only when the official, through her "own individual actions, has violated the Constitution." *Id.* Henderson merely alleges that Haines, L. Brown, and Gardner "encouraged" T. Brown, Hennerman, and Nelson "to abuse and attack

11

Plaintiff Henderson." (ECF No 1 at 6.) But he does not allege how they encouraged the attack or what they did to encourage it. Henderson's conclusory allegation alone is insufficient to raise his supervisory liability claim above the speculative level. *See id.* at 678 (citing *Twombly*, 550 U.S. at 555).

Henderson also alleges that, after the attack, L. Brown, Gardner, and Brudos left him naked in a cold cell without bedding or clothes. These allegations amount to a claim of deliberate indifference to Henderson's health and safety, which also arises under the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A claim of deliberate indifference consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm." *Id.* The subjective component of an Eighth Amendment violation requires a prisoner to demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. 294 at 302–03. "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Thus, "the prison official must know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837–38. Henderson's allegations that L. Brown, Gardner, and Brudos placed him in a cell without clothes, bedding, or food "to impose pain and suffering" satisfies both components. This claim will be allowed to proceed.

To the extent Henderson seeks to hold Wall liable as supervisor of L. Brown, Gardner, and Brudos, he does not state a claim. Henderson alleges that Wall sent

12

emails meant to address the conditions of inmates in segregation at WSPF. Henderson's allegations do not suggest that Wall disregarded Henderson's condition, even if Henderson's conditions did not change or improve.

Henderson alleges that T. Brown, L. Brown, and Hennerman wrote a false report against him after the attack. He says Tom and Haines imposed 360 days of solitary confinement based on the report, which extended his mandatory release date, without a hearing. To the extent Henderson seeks to challenge the validity of his disciplinary conviction, he is barred from doing so because that claim, if successful, would necessarily imply the invalidity of his prison disciplinary conviction that extended his time "in custody." *See Simpson v. Nickel*, 450 F.3d 303, 307 (7th Cir. 2006); *Cunningham v. O'Leary*, 40 F. App'x 232, 235 (7th Cir. 2002) (citing *Edwards v. Balisok*, 520 U.S. 641, 648 (1997)). But Henderson is not barred from challenging the denial of a hearing before imposition of 360 days' solitary confinement because that claim challenges only a condition of his confinement—his year in segregation—even though the condition is the result of a prison disciplinary action. *See DeWalt v. Carter*, 224 F.3d 607, 617–18 (7th Cir. 2000).

Henderson's allegation that he was denied a hearing before being sentenced to solitary confinement arises under the Fourteenth Amendment. "The Due Process Clause of the Fourteenth Amendment applies only to deprivations of life, liberty, and property." *Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017). Henderson must allege that he was deprived of a protected liberty interest by being sentenced to 360 days in segregation. If he was, then he was due a hearing before imposition of that sentence.

13

*Id.* (citing *Hess v. Bd. of Trs. of S. Ill. Univ.*, 839 F.3d 668, 673 (7th Cir. 2016)). A prison disciplinary proceeding does not give rise to a protected liberty interest unless the restrictions imposed constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). A long stint in disciplinary segregation does not create a protected liberty, even if it lasts the entire length of the prisoner's incarceration. *Hernandez v. Hanks*, 65 F. App'x 72, 74 (7th Cir. 2003) (citing *Wagner v. Hanks*, 128 F.3d 1173, 1176 (7th Cir.1997), and *Sandin*, 515 U.S. at 484). But the court must consider "both the duration *and* the conditions of the segregation." *Marion v. Columbia Correction Inst.*, 559 F.3d 693, 698 (7th Cir. 2009). A year of segregation in conditions that are "significantly harsher than those in the normal prison environment" could constitute a deprivation of liberty. *Id.* (citing *Bryan v. Duckworth*, 88 F.3d 431, 433 (7th Cir. 1996), *abrogated on other grounds by Diaz v. Duckworth*, 143 F.3d 345, 346 (7th Cir. 1998)).

Henderson does not describe the conditions of his segregation. He alleges only that he was sentenced to 360 days in segregation for the disciplinary infraction. Because the length of his segregation was so long, however, the court will allow this claim to proceed. *See Marion*, 559 F.3d at 698–99 (concluding that review of prisoner's claim that he was kept in segregation for 240 days "requires scrutiny of the actual conditions of segregation" and remanding).

Henderson's only allegation concerning Boughton is that Henderson filed grievances and special placement needs forms to him. Henderson does not allege

whether these forms were answered. Prisoners do not have a constitutional right to be assigned to a particular prison, security classification, or housing assignment. *See Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Meachum v. Fano*, 427 U.S. 215, 225 (1976); *Montanye v. Haymes*, 427 U.S. 236, 243 (1976). And because there is no inherent constitutional right to a prison grievance system, *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996), any complaint that his grievances went unanswered does not state a claim, *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007).

Finally, Henderson's complaint contains no allegations against Lieutenant Hanfield. When a complaint fails to allege any action by a Defendant, it necessarily fails to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. He therefore does not state a claim against Hanfield.

## 3. Conclusion

**THEREFORE, IT IS ORDERED** that Henderson's motion for leave to proceed without prepaying the filing fee (ECF No. 3) is **GRANTED**. Henderson's motion to waive the initial partial filing fee (ECF No. 9) also is **GRANTED**.

It is **FURTHER ORDERED** that defendants Wall, Boughton, and Hanfield are **DISMISSED** from this case.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on defendants Schwochert, Jess, Hennerman, T. Brown, Nelson, Godfrey, L. Brown, Gardner, Brudos, Tom, and Haines. It is **ORDERED** that, under the informal service

agreement, those defendants shall file a responsive pleading to the complaint within 60 days.

**IT IS FURTHER ORDERED** that the agency having custody of Henderson shall collect from his institution trust account the $350.00 balance of the filing fee by collecting monthly payments from Henderson's prison trust account in an amount equal to 20% of the preceding month's income credited to Henderson trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Henderson is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this order along with his remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where Henderson is confined.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[3] must submit all correspondence and case filings to

---

[3] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

Henderson is further advised that failure to make a timely submission may result in the dismissal of this case for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin this 9th day of October, 2019.

*William E. Duffin*
WILLIAM E. DUFFIN
U.S. Magistrate Judge