# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**TITUS HENDERSON,**

      **Plaintiff,**

v.                                                                         **Case No. 19-CV-749**

**JIM SCHWOCHERT,** *et al.*,

      **Defendants.**

## DECISION AND ORDER

Plaintiff Titus Henderson, a Wisconsin state prisoner who is representing himself, filed this lawsuit under 42 U.S.C. § 1983. (ECF No. 1.) The court screened the complaint and allowed Henderson to proceed with the following claims: (1) defendants Phillip Henneman, Nicole Nelson, and Jason Godfrey used excessive force during a prison escort on January 24, 2013; (2) defendants Lebbeus Brown, David Gardner, and Todd Brudos exposed Henderson to unconstitutional conditions of confinement following the use of excessive force; (3) defendants Henneman, Brown, Craig Tom, and Tim Haines issued a false conduct report and then sentenced Henderson to 360 days in segregation in violation of his right to due process; and (4) defendants Jim Schwochert and Cathy Jess created and implemented DOC 373.09 to protect juvenile inmates without a complementary policy allowing adult inmates to use self-defense when attacked by guards. (ECF No. 10.) This order resolves several

pending motions, including the defendants' motion for summary judgment. (ECF Nos. 20-21, 33, 35.)

### 1. The Defendants' Motion to Amend/Correct the Answer

On May 20, 2020, the defendants filed a motion to amend/correct the answer to include a statute of limitation affirmative defense. (ECF No. 20.) Rule 8 requires the defendants to include affirmative defenses in the answer. *See* Fed. R. Civ. P. 8(c). "So what happens when an affirmative defense is not raised in accordance with Rule 8(c)?" *Burton v. Ghosh,* 961 F.3d 960, 965 (7th Cir. 2020). Under Rule 15 (a), a district court can "exercise its discretion to allow a late affirmative defense if the plaintiff does not suffer prejudice from the delay." *Id.* (citing *Global Technology & Trading, Inc. v. Tech Mahindra Ltd.*, 789 F.3d 730, 732 (7th Cir. 2015)).

As the Court of Appeals for the Seventh Circuit recently explained, "prejudice" does not mean "whether the defense will succeed on the merits and cause the plaintiff to lose." *Id*. at 966. Instead, it means "unfair prejudice, meaning that the late assertion of the defense causes some unfairness independent of the potential merits of the defense." *Id*. "[W]here the plaintiff has an opportunity to respond to a late affirmative defense, he cannot establish prejudice merely by showing that the case has progressed significantly since the defendants answered his complaint." *Williams v. Lampe*, 399 F.3d 867, 871 (7th Cir. 2005).

Henderson did not oppose the defendants' motion to amend the answer. The court notes that the defendants filed their motion to amend the answer in May 2020, while discovery was still open. Henderson had the opportunity to ask for evidence

2

related to the statute of limitations if he needed such evidence. In addition, he fully responded to the statute of limitation defense in his summary judgment response. (*See* ECF No. 30 at 2-6.) The court will grant the defendants' motion to amend/correct the answer to include a statute of limitations affirmative defense.

### 2. Henderson's Motion to Deny/Defer Ruling on Motion for Summary Judgment

On September 4, 2020, after the parties had fully briefed the defendants' motion for summary judgment, Henderson filed a motion to deny/defer ruling on it until the defendants produce more evidence related to the summary judgment motion. (ECF No. 33.) Henderson states that the defendants refused to respond to his discovery requests for:

> (1) WSPF staff target list of inmates approved to be attacked by prisoner staff;
> (2) DOC-112 Control Status form DOC-2308;
> (3) defendants' disciplinary files; and
> (4) plaintiff's disciplinary file.

(*Id.* at 4.)

The defendants explain that, because Henderson did not timely serve some of his discovery requests, they sent him a letter explaining that they would not respond to those requests. (ECF No. 37.) To the extent Henderson disagreed with the defendants' position that they were not obligated to respond to his discovery requests, his remedy was to file a motion to compel. The court will deny Henderson's motion to deny/defer ruling on the motion for summary judgment.

3

### 3. Henderson's Motion for Default Judgment

On September 25, 2020, again after the parties had fully briefed the defendants' summary judgment motion, Henderson filed a motion for default judgment "as a sanction for fraud/false affidavit." (ECF No. 35.) In his motion Henderson states that Conduct Report #2302597, issued by deceased former defendant Thomas Brown, was "forged" by Institution Complaint Examiner (ICE) Ellen Ray. (*Id*. at 2.) He states that Ray's affidavit swearing that she submitted "true and correct" copies of his conduct reports and other documents is false. (*Id*.) Henderson notes that the handwriting on Conduct Report #2302597 does not match the handwriting on two other conduct reports issued by Brown. (*Id*. at 3; *see also* ECF No. 36-1.) He also states that he never received Conduct Report #2302587. (*Id*.)

Henderson also separately states that defense counsel used various unethical tactics to litigate this case. (*See* ECF No. 33.) Throughout Henderson's summary judgment briefing materials he reiterates that defense counsel filed false documents with the court and states that the documents related to his inmate complaint history are forged or falsified. (*See* ECF Nos. 30, 31, and 33.) He also states that the documents on the record showing that other documents were delivered are also false. (*Id*.)

Henderson does not cite to any credible evidence to support his allegations of fraud. Ray's declaration does erroneously say that Henderson received conduct report #2302**87** (rather than conduct report #2302**97**). (*See* ECF No. 26, ¶20.) But Henderson does not produce any evidence that that was anything other than a typo.

4

(*See* ECF No. 26-6.) Further, although the handwriting in conduct report #2302597 may appear different than the handwriting in the two other conduct reports submitted by Henderson (*compare* ECF No. 26-1 *with* ECF No. 36-1 at 1, 3), the court has no basis for concluding that different people wrote the reports, let alone that Ray fraudulently wrote conduct report #2302597.

Henderson states, "the court has failed to hold a hearing to address witnesses" (ECF No. 39 at 1), but given that Brown is dead it is unclear what additional information would be elicited at a hearing. Based on the court's review of the documents, there is no evidence leading it to believe that documents filed in the case are false or fraudulent. The court will deny the motion for default judgment.

### 4. The Defendants' Motion for Summary Judgment

In this district attorneys litigating against *pro se* parties must include with their motion for summary judgment a copy of the relevant local rules explaining that the court would take uncontradicted facts as true for purposes of deciding the motion. *See* Civ. L. R. 56(a) (E.D. Wis.) The defendants followed the local rule in filing their motion for summary judgment. (ECF No. 21.) The court separately issued a "Notice and Order" explicitly warning Henderson that his failure to respond to the defendants' proposed findings of fact would result in the court taking them as true for purposes of resolving the motion for summary judgment. (ECF No. 27.) Henderson has not responded to the defendants' proposed findings of fact. Thus, the court will take the defendants' proposed findings of fact as true for purposes of this motion. *See* Civ. L. R. 56(b)(4) (E.D. Wis.)

a. Facts

At all times relevant to this lawsuit Henderson was an inmate at the Wisconsin Secure Program Facility (WSPF). (ECF No. 1.) All of the defendants are or were employees of the Wisconsin Department of Corrections (DOC). (ECF No. 23, ¶ 2.) Jim Schwochert was Administrator of the Division of Adult Institutions (DAI); Cathy Jess was DOC Secretary; Tim Haines was WSPF Warden; and Craig Tom, Todd Brudos, David Gardner, Lebbeus Brown, Jason Godfrey, Nicole Nelson, and Phillip Hennerman were correctional officers at WSPF. (*See* ECF No. 1.)

*i. The January 24, 2013 Incident*

On January 24, 2013, Henderson had an appointment to go to the law library. (ECF No. 31, ¶¶13-17.) Several correctional officers arrived at his cell to escort him. (*Id.*, ¶ 13.) Sgt. Scullion (not a defendant) allegedly asked Henderson, "you ready for law library," to which Henderson responded, "yes." (*Id.*, ¶ 14.) Sgt. Scullion then allegedly said, "oh you ready to go on control status," to which Henderson responded, "what the fuck you say." (*Id.*) Henderson states that Godfrey, Brown (who, as discussed, is deceased and no longer a defendant), and Gallagher (not a defendant) were "making threats to cause harm…claiming they kill my nigger ass." (*Id.*, ¶¶ 16-17.)

Later that day several officers went to the law library to escort Henderson back to his cell. (ECF No. 31, ¶¶ 18-26.) At the law library Henderson heard Sgt. Scullion say, "where is Lt. Esser we have some business to take care of with Henderson." (*Id.*, ¶ 18.) Sgt. Scullion said, "we'll be sending a guy to control status soon." (*Id.*, ¶ 19.)

6

Henneman then allegedly said, "show me how to kill this nigger and not be criminally charged." (*Id.*, ¶ 20.) In response to that comment Godfrey mimicked hitting Henderson in the back of the neck with his elbow. (*Id.*, ¶ 21.) Godfrey then said, "you have to kick his outside leg to make it look like a clean self-defense kill." (*Id.*) The escort then began. (*Id.*, ¶¶ 22-26.)

There is a dispute as to what happened during the escort back to Henderson's cell. According to Henderson, during the escort Henneman asked, "what's in your mouth," to which Henderson responded, "I'm chewing on plastic." (ECF No. 31, ¶ 22.) Henneman then directed Nelson to "snatch" Henderson's leg shackles to cause Henderson to fall. (*Id.*, ¶¶22-23.) Henneman struck Henderson in his right ribs and kicked his right leg. (*Id.*, ¶23.) Henneman and Nelson yelled, "kill you nigger" as they struck and kicked Henderson on the floor. (*Id.*, ¶25.) Godfrey came running and said, "you killed that nigger?" (*Id.*, ¶26.) Godfrey was "looking and laughing." (*Id.*)

The defendants dispute these allegations and have attached two videos that corroborate their version of events. (ECF No. 23, ¶¶53-74; *see also* ECF No. 25-1 and 25-2.) According to the defendants, Henderson and the officers were walking down a hallway toward Henderson's cell. (ECF No. 23, ¶¶ 55-62.) Henderson was in the middle; Henneman was on the right side; Brown was on the left side; and Nelson was behind the group. (*Id.*, ¶ 56.) Once in front of Henderson's cell Brown attempted to put a strap on Henderson's wrist to attach him to the cell door. (*Id.*, ¶ 63.) Henderson responded by head-butting Brown. (*Id.*) The three officers then worked together to take Henderson to the floor to restrain him; Henderson resisted. (*Id.*, ¶ 64.) While on

7

the floor Henneman maintained control of Henderson's head, Nelson maintained control of Henderson's torso, and Brown maintained control of Henderson's feet and legs. (*Id*.) A short time later Godfrey and some other officers arrived at the scene. (*Id*., ¶¶ 66-71.) One of the officers placed a spit mask on Henderson and the others helped Henderson off the floor. (*Id*., ¶¶72-73.)

### ii. *Henderson's Conduct Report and Disciplinary Hearing*

Four days after the incident, on January 28, 2013, Henderson received conduct report #2302597 for battery. (ECF No. 23, ¶ 44.) The conduct report alleged that Henderson tried to head-butt Brown during an escort and was threatening Brown. (*Id*.) Henderson requested a disciplinary hearing. (*Id*., ¶¶45-46.) He received a staff advocate (Sgt. Boardman) and submitted evidence, including his own statement and a video of the incident. (*Id*., ¶ 46.) The record shows that Henderson received all of these due process rights (*see* ECF No. 26-6 at 3-4), but Henderson maintains that all the records are "false" or "fraudulent." (*See* ECF No. 31, ¶¶ 5-11.)

Tom served as the hearing officer for the disciplinary hearing. (ECF No. 23, ¶47.) He considered the allegations in the conduct report, watched the video of the incident, looked at photos from the incident, reviewed verbal and written testimony from Henderson, and listened to testimony from Henderson's staff advocate (Sgt. Boardman). (*Id*., ¶ 50; *see also* ECF No. 26-6.) Tom asked Henderson whether he wanted to add anything to what he previously submitted, to which Henderson responded, "No." (ECF No. 23, ¶ 48.) Henderson also declined to ask questions about

8

the video. (*Id.*, ¶49.) Henderson states that the entire hearing was "less than five minutes." (ECF No. 31, ¶ 12.)

Based on the evidence Tom concluded that it was "more likely than not Henderson committed the alleged violation of 303.12 battery." (ECF No. 23, ¶ 50.) He sentenced Henderson to 360 days in segregation. (*Id.*) Henderson received a copy of the Hearing Officer's Report on February 19, 2013. (*Id.*, ¶ 51.)

### iii. Henderson's Conditions of Confinement

Following the January 24, 2013 incident, Brown, Gardner, and Brudos allegedly placed Henderson "in control status naked for days until January 30, 2013." (ECF No. 31, ¶3.) Henderson states, "I was denied clothes, bedding, mattress, and forced inside a cell smeared in feces." (*Id.*, ¶4.) Neither Henderson nor the defendants provide any additional facts about this claim. (*See* ECF Nos. 23 and 31.)

### iv. Henderson's Inmate Complaints

Henderson filed three inmate complaints relevant to this lawsuit. (*See* ECF Nos. 26-2, 26-3, 26-4.) On or around February 4, 2013, Henderson filed Inmate Complaint WSPF-2013-2385 alleging that he was "denied mental health care by observation status prohibiting basic necessities of life." (*See* ECF No. 26-2 at 11.) ICE Kelly Trumm (not a defendant) recommended dismissing the complaint because it did not provide enough information to investigate the inmate complaint. (*Id.* at 2.) Trumm wrote,

> Dr. Hoem was contacted and relayed, "Clinical observation is a restricted property status for inmates who are a risk for hurting themselves. Mr. Henderson had shelter, water, toilet, clothing,

9

mattress, toilet paper, was provided meals, etc? Not sure what other basic necessities of life he is referring to? Especially since he requested to be placed in clinical observation himself."

Lacking information and evidence to investigate further this complaint is dismissed.

(*Id*.)

Henderson appealed the decision and specified that Dr. Hoem (not a defendant) lied about giving him mental health care. (ECF No. 26-2 at 17.) He noted that Dr. Hoem had placed him in a cold and filthy cell with no toilet paper, no hygiene, no showers, no forms of communication, and no clothes. (*Id*.) The Correctional Complaint Examiner (CCE) recommended dismissing the complaint. (ECF No. 26-2 at 5.) It noted that Dr. Hoem denied forging inmate files. (*Id*.) The Office of the Secretary of the DOC accepted the recommendation and dismissed the complaint on March 18, 2013. (*Id*. at 9.)

On or around on April 24, 2013, Henderson filed inmate complaint WSPF-2013-8115. (*See* ECF No. 26-3 at 6.) Henderson raised procedural issues about a different conduct report and wrote, "I was placed in clinical observation [and] tortured by denial of life basic necessities." (*Id*.) ICE Ray (not a defendant) recommended dismissing the complaint on May 14, 2013, because there were no procedural errors. (*Id*. at 2.) Haines agreed and dismissed the inmate complaint on May 29, 2013. (*Id*. at 3.) Henderson did not appeal the decision to the CCE. (*See id*. at 4; *see also* ECF No. 23, ¶¶ 25-27.)

On or around on April 24, 2013, Henderson filed inmate complaint WSPF-2013-8116. (*See* ECF No. 26-4 at 6.) Henderson challenged Conduct Report #2302597

10

Case 2:19-cv-00749-WED   Filed 12/16/20   Page 10 of 20   Document 41

and wrote that Henneman, T. Brown, and Nelson "attacked" him, causing injury to his back and neck. (*Id.*) Henderson stated, "I was denied food as torture/punishment," and "I've been denied recreation since July 19, 2012 to April 24, 2013." (*Id.*) ICE Ray recommended dismissing the inmate complaint because there were no procedural errors in the conduct report. (*Id.* at 2.) On May 29, 2013, Haines agreed and dismissed the inmate complaint. (*Id.* at 3.) Henderson did not appeal the decision to the CCE. (*See id.* at 4; *see also* ECF No. 23, ¶¶34-35.)

The record also refers to several other inmate complaints that are not relevant to this lawsuit. Inmate complaint WSPF-2013-9798 alleges that Sgt. Scullion and T. Brown (neither of whom are defendants) used racial slurs in May 2013. (ECF No. 26-5 at 7.) Inmate complaints WSPF-2008-22498, WSPF-2008-22499, and WSPF-2009-26302 were filed in 2008 and 2009, several years before the incidents giving rise to this lawsuit. (*See* ECF No. 31-1 at 9, 18, and 26.) The court notes that it does not have copies of these last three inmate complaints; the record only contains the ICE receipt of the complaints. (*See id.*)

Henderson also states that he filed inmate complaint WSPF-2013-2333 about his conditions of confinement. (*See* ECF No. 31, ¶ 47.) The court reviewed the record and found WSPF-2013-2833, but that inmate complaint does not involve any of the defendants or claims in in this case. *(See* ECF No. 26-1 at 1.) Finally, Henderson states that he filed inmate complaint WSPF-2011-3704 (*see* ECF No. 30 at 9), but the court does not have a copy of that complaint or the ICE receipt for it. (*See* ECF No. 31-1.)

11

Henderson did not file any other inmate complaints or appeals related to the claims in this case. (ECF No. 23, ¶¶18, 27, 35, 52.)

> b. *Summary Standard*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in

12

evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

### c. Analysis

#### i. Statute of Limitations

"Section 1983 does not contain an express statute of limitations, so federal courts adopt the forum state's statute of limitations for personal injury claims." *Johnson v. Rivera*, 272 F.3d 519, 521 (7th Cir. 2001). Under Wisconsin law, the statute of limitations at the relevant time was six years. *See* Wis. Stat. § 893.53; *see also Kennedy v. Huibregtse*, 831 F.3d 441, 442 (7th Cir. 2016) ("Civil-rights lawsuits brought in Wisconsin under 42 U.S.C. § 1983… are governed by the state's six-year statute of limitations for injuries to personal rights."). The statute of limitations is tolled while a prisoner completes the administrative grievance process. *Givens v. Luedtke*, 587 F. App'x 979, 981 (7th Cir. 2014) (citing *Johnson,* 272 F.3d at 521-22 and Wis. Stat. § 893.23.)

The defendants argue that they are entitled to summary judgment because the incidents giving rise to this lawsuit occurred between January 2013 and April 2013. They assert that Henderson filed this lawsuit on May 19, 2019, about one month past the six-year statute of limitations. The record shows that Henderson did not receive a decision on WSPF-2013-8116 and WSPF-2013-8115 until May 29, 2013. The statute of limitations was tolled while he waited for a decision on those inmate complaints. Thus, Henderson had until May 29, 2019, to file a lawsuit related to the claims he raised in those inmate complaints. Therefore, the statute of limitations does not bar

13

the excessive force claim against Henneman, Nelson, and Godfrey or the due process claim against Henneman, Brown, Tom, and Haines arising from the facts alleged in WSPF-2013-8115 and WSPF-2013-8116.

Henderson received a final decision on WSPF-2013-2385 on March 18, 2013. As such, he had until March 18, 2019, in which to file a lawsuit related to the claims in that inmate complaint. Henderson did not file this lawsuit until two months after that date, in May 2019. Thus, the conditions of confinement claim against Brown, Gardner, and Brudos arising from the facts alleged in WSPF-2013-2385 is barred by the statute of limitations.

Henderson states that equitable estoppel applies to toll the statute of limitations on all of his claims due to "fraudulent concealment." He states that the defendants took active steps to prevent him from filing this lawsuit in time. As discussed above, Henderson has not provided any credible evidence of fraudulent conduct from anyone involved in this lawsuit. As such, the doctrine of equitable estoppel does not apply to toll the statute of limitations.

### ii. Exhaustion of Administrative Remedies

"[N]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). "To satisfy the exhaustion requirement, an inmate must take each of the steps prescribed by the state's administrative rules governing prison grievances." *See Chambers v. Sood,* 956 F.3d 979, 983 (7th Cir. 2020) (citing

14

*Lockett v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019)); *see also Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) ("Unless a prisoner completes the administrative process by following rules the state has established for that process, exhaustion has not occurred."). "The primary justification for requiring prisoners to exhaust administrative remedies is to give the prison an opportunity to address the problem *before* burdensome litigation is filed." *Chambers,* 956 F.3d at 983 (citing *Woodford v. Ngo*, 548 U.S. 81, 93–95 (2006), and *Schillinger v. Kiley*, 954 F.3d 990, 995–96 (7th Cir. 2020)).

Wisconsin established the Inmate Complaint Review System (ICRS) to review prisoner grievances. *See* Wis. Admin. Code § DOC 310 (2013). It requires inmates to use the ICRS to challenge issues regarding rules, living conditions and employee actions that personally affect the inmate or institution environment, including civil rights grievances. § DOC 310.01. The inmate must file a complaint with the Inmate Complaint Examiner ("ICE") within 14 calendar days after the occurrence giving rise to the complaint. § DOC 310.07. The examiner makes a recommendation to the reviewing authority, who either dismisses or affirms the complaint. §§ 310.10, 310.12. If the inmate is dissatisfied with the reviewing authority's decision, he may appeal to the Correctional Complaint Examiner (CCE). § DOC 310.13. The CCE then recommends a decision to the Secretary of the DOC, who may accept, adopt, reject, or return the recommendation. § DOC 310.14. The Secretary's decision is final. *Id*. Wisconsin's statutory scheme requires that an inmate "shall exhaust all

15

administrative remedies the department has promulgated by rule" before he can commence a civil action. § DOC 310.05.

The defendants assert that they are entitled to summary judgment because Henderson did not *complete* the ICRS exhaustion process on inmate complaints WSPF-2013-8115 and WSPF-2013-8116. In WSPF-2013-8115 Henderson complained about procedural issues from a different conduct report and "torture by denial of life basic necessities." He filed this inmate complaint with the ICE but did not appeal it to the CCE. In WSPF-2013-8116 Henderson complained about the use of excessive force on January 24, 2013, procedural issues in the conduct report related to that incident, "denial of food as torture/punishment," and denial of recreation. He filed this inmate complaint with the ICE but did not appeal it to the CCE. Finally, Henderson did not file *any* inmate complaints with respect to his Fourteenth Amendment equal protection claim.

Henderson disputes this evidence and says that he *did* appeal his inmate complaints to the CCE. (*See* ECF No. 31, ¶¶34-35, 45-46.) Henderson states that the CCE "never responded." (*Id.*) The Seventh Circuit recently discussed similar allegations from an inmate and concluded that inmates cannot "counter evidence that the prison did not receive his administrative appeal with a bald assertion of timely filing." *Lockett*, 937 F.3d at 1027. The Seventh Circuit explained that Wisconsin's ICRS uses a receipt system, and the failure to receive a receipt constitutes a "red flag" which requires the inmate to inquire why he had not received "such an important document." *Id.* at 1026-27. In *Lockett*, the Seventh Circuit concluded that, because

16

the plaintiff failed to take any action when he did not receive a receipt, he failed to exhaust his administrative remedies. *Id*.

Henderson has not presented any evidence that he did anything when the CCE "never responded" to his filings. The text of the ICRS specifically notified him that he should have expected the "CCE's acknowledgement of receipt of the appeal." §DOC 310.14(3). Thus, like the plaintiff in *Lockett*, by not appealing to the CCE, or inquiring of the CCE why he had not received a notice of his appeal, Henderson failed to exhaust his administrative remedies.

Henderson states that he raised his equal protection claim about DOC 373.09 as a "defense." (*See also* ECF No. 30 at 12.) The ICRS does not allow him to raise grievances in this way. Henderson was required to raise civil rights grievances by filing an inmate complaint. § DOC 310.01.

Finally, Henderson argues that, under the "continuing violation" doctrine, he was not required to exhaust his administrative remedies. (*See* ECF No. 30 at 7-13.) He attaches the ICE receipt for three inmate complaints he filed in 2008 and 2009 and states that the constitutional violations have been going on continuously since 2008. (*Id*.) He also states that in 2011 he filed inmate complaint WSPF-2011-3704. (*See* ECF No. 30 at 9.) But the court does not have a copy of that inmate complaint or the ICE receipt for it. (*See* ECF No. 31-1.)

Under the continuing violation doctrine, inmates need not file multiple inmate grievances raising the same ongoing issue. *See Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). "A violation is continuing where 'it would be unreasonable to require

or even permit [a prisoner] to sue separately over every incident of the defendant's unlawful conduct.'" *Id.* at 651 (quoting *Heard v. Sheahan,* 253 F.3d 316, 319 (7th Cir. 2001)). Examples include unconstitutional prison policies that violate an inmate's rights each day the policy is in effect (i.e., long-standing prison lockdowns), repeated conduct that alone may not be actionable but would be actionable in the aggregate (i.e., sexual harassment), and complaints that involve the same underlying facts and claims. *Id.*

The continuing violation doctrine does not apply here. There is no prison policy, continued conduct, or common underlying facts or issues between the old inmate complaints and the complaints at issue in this case. Each claim in this case is based on an isolated incident, with a definite time period and unique underlying facts. Henderson states that some of the defendants from his old inmate complaints were also involved in this case. But given that many years passed between those inmate complaints and the events giving rise to this lawsuit, the court cannot conclude that those inmate complaints put the prison on notice of the claims in this case.

Nothing Henderson has submitted demonstrates that there is a genuine issue of material fact with respect to whether he exhausted all available administrative remedies on his claims. Therefore, the defendants are entitled to summary judgment and the court will dismiss this case.

*5. Conclusion*

**IT IS THEREFORE ORDERED** that:

(1) Defendants' motion to amend/correct the answer (ECF No. 20) is **GRANTED**;

(2) Plaintiff's motion to deny/defer ruling on defendants' motion for summary judgment (ECF No. 33) is **DENIED**;

(3) Plaintiff's motion for default judgment (ECF No. 35) is **DENIED**; and

(4) Defendants' motion for summary judgment (ECF No. 21) is **GRANTED** and this case is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time,

generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin, this 16th day of December, 2020.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge